RECEIVED
SDNY PRO SE OFFICE
2023 JAN 23 PM 3: 25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Robert Derek Lurch Jr.

Write the full name of each plaintiff.

No. 22-cv-2324
(To be filled out by Clerk's Office)

-against-

**AMENDED COMPLAINT**
**(Prisoner)**

(see attached) (Defendant Information)

Do you want a jury trial?
☑ Yes ☐ No

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☑ Violation of my federal constitutional rights

☐ Other: ______________________________

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

Robert D. Lurch

First Name Middle Initial Last Name

______________________________

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

8252200446

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

GRVC

Current Place of Detention

09-09 Hazen St.

Institutional Address

East Elmhurst NY 11370

County, City State Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☑ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☐ Convicted and sentenced prisoner

☐ Other: ______________________________

IV. Defendant Information

Defendant 1: Jonathan Howard
First Name Last Name Shield #

Medical Doctor
Current Job Title

462 First avenue (NYCHHC/Bellevue Hospital)
current work address

New York NY 10016
County, City State Zip code

Defendant 2: Kesina Sarty
First Name Last Name Shield #

Registered Nurse
Current Job Title

462 First avenue (NYCHHC/Bellevue Hospital)
current work address

New York NY 10016
County, City State Zip code

Defendant 3: ERic Kim 787
First Name Last Name Shield #

Police officer
Current Job Title

357 west 35th street
current work address

New York NY 10001
County, City State Zip code

Defendant 4: amanda Psareas 29525
First Name Last Name Shield #

Police officer
Current Job Title

357 west 35th street
Current work address

New york NY 10001
County, city State Zip code

Defendant 5: "John doe officers that assisted with carrying the Plaintiff"
First Name Last Name Shield #

"including the ones who detained and transported him"
Current Job Title

Current work address

County, City State Zip code

Defendant 6:
First Name Last Name Shield #

Current Job Title

Current work address

county, city State Zip code

## V. STATEMENT OF CLAIM

Place(s) of occurrence: ① Times square and ② Bellevue Hospital

Date(s) of occurrence: May 9 / 2021

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

-See Attached-

Facts of the Incident

On May 9, 2021 In the afternoon hours of the day, the plaintiff phone had died and In order to recharge this device, I entered the express clothing store (located between 46th and 47th st on 7th avenue In New York NY) and Inquired as to whether I can utilize a wall outlet to charge my phone.

Now I can't recall as to whether the manager of the store at the time of the Incident or the security guard (that usually stands by that specific wall outlet) granted me permission to utilize the outlet; Nevertheless, I was granted permission and exited the store to mingle with the female tourist that were walking by while my phone charged.

after conversating with a few Females, I decided I was hungry and purchased some Food and drink From a nearby Food cart. I then went back In the Express clothing store to eat and drink In the area where my Phone was charging as I seen many others do before me as they waited for their Family members to shop.

When I entered the store, however, one of the store personnel became Irate with me as I sat down to eat and drink; Like I wasn't given Permission to do so (minutes earlier) (due to they allowing me to charge my Phone and wait In that area) and exited the store, returning with police.

Officers then Informed me to Leave the store but I Informed them that Im In the middle of eating and drinking, I will Leave when Im Finish I haven't done anything.

The responding officers began talking very nasty to me and began to

take me into custody very aggressively for no apparent reason. NYPD personnel even degrided on me while I was handcuffed (already) outside the store in the process of being transported to the hospital.

Once I arrived at the hospital I was immediately transported by staff to the Adult CPEP while being supervised by the officers that rode in the ambulance with me.

Since the plaintiff knew he was not guilty of any criminal conduct prior to being seized, I patiently waited to be seen by the physician that would eventually evaluate me and determine if I would be admitted or released to society (Due to the plaintiff being aware that he was not under arrest).

When I spoke to the MD that evaluated me, I informed him that I was simply enjoying a meal that I bought while charging my phone utilizing the store I was in electrical outlet that was available and accessible by the public when NYPD charged in and attempted to forcibly remove from an establishment that I wasn't banned from.

After the evaluation, the doctor asked officers "Is he being charged with any crime"? Once the officers responded no, the doctor informed officers that I will be released and the hospital is not admitting me.

Officers didn't take the news well and begin acting in my face as the hospital gave me my street clothes to change back into as well as my phone.

As soon as I changed into my clothes and waited for my dischage papers, I started recording the police conduct with my phone because I knew I was going to pursue civil action against the officers for violating

my rights(I uploaded the recording on my Facebook Page but later deleted it).

While recording the officers being verbally abusive and threatening the plaintiff, the plaintiffs phone was then knocked out of his hand by officers and the plaintiff was grabbed forcefully by these officers as they told the staff that was near us that I needed medicine to calm me down.

I was then forcibly medicated by hospital staff as officers held me. shortly after being injected, the plaintiff began experiencing trouble breathing and when the hospital staff noticed my reaction to the medication; they injected me again causing the adverse reaction I was experiencing to subside.

To add insult to injury, I was then informed by officers I was being charged but I was not informed as to what I will be charged with as handcuffs was placed on my wrist.

Subsequently, I was escorted out of the hospital by officers and later charged by NYPD for charges that the plaintiff did not commit.

Unlawful seizure in violation

of Fourth amendment

Protections

Under MHL § 9.41, a police officer "may take into custody [and remove to a hospital] any person who appears to be mentally ill and is conducting ... himself or herself in a manner which is likely to result in serious harm to the person or others" (N.Y. mental Hyg. Law § 9.41).

In assessing whether an officer had probable cause to arrest a person under this statute, courts apply the same objective reasonableness standard that governs Fourth amendment claims (see Kerman v. City of New York, 261 F.3d 229).

Thus, in cases involving arrests under MHL § 9.41, probable cause exists where "the facts and circumstances known to the officers at the time [of the arrest] were sufficient to warrant a person of reasonable caution to believe that [the plaintiff] might be mentally ill and was conducting [himself] in a manner likely to result in serious harm to [himself or others]" (see Dunkelberger v. Dunkelberger, No. 14-cv-3877, 2015 U.S. Dist. LEXIS 133819).

In the instant matter, an Express clothing store security guard left the establishment and after communicating with officers for a few seconds, officers entered the establishment with the security guard requesting that the plaintiff leave the establishment (The plaintiff is unaware of what was communicated to these officers as far as the grounds for the plaintiff's removal).

After officers tried to intimidate the plaintiff to leave the

claim

False arrest claim

A §1983 claim for false arrest, resting on the Fourth amendment right of an individual to be free from unreasonable seizures, ... is substantially the same as a claim for false arrest under New York law" (Weyant v. Okst, 101 F.3d 845).

Both claims require a plaintiff to "show, inter alia, that the defendant intentionally confined him without his consent and without justification" (Id.).

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime" (Weyant, 101 F.3d at 852).

The relevant inquiry focuses on "the facts as the officers knew them in light of the specific elements of each crime" (Gonzalez, 728 F.3d at 155).

However, the defendant need not demonstrate that there was probable cause to arrest for the crimes charged as long as there was probable cause to arrest for any possible crime (see Betts v. Shearman, No. 12 Civ. 3195 (JPO), 2013 U.S. Dist. Lexis 11139).

Now in the instant matter, the plaintiff was charged with the following crimes: (1) Failure to pay service (based on stealth), (2) obstructing governmental admin, (3) criminal trespass in the 3rd degree and (4) Disorderly conduct (fight/violent behavior).

The plaintiff will like this court to be reminded that when officers approached the plaintiff, he was merely eating and drinking (a non-

alcoholic beverage) inside a display case within the Express clothing store (a place of public accomodation) that he was not previously banned from nor engaged in criminal activity that warranted his removal.

Furthermore, the plaintiff being accused of violating subdivision 3 of section 165.15 of Penal Law is absurd. This statute pertains to avoiding payment of a public transportation service after obtaining such service.

which has absolutely nothing to do with any activities, legal or illegal, that the plaintiff could of potentially partook in inside of a clothing store.

Therefore, the plaintiff was arrested without probable cause at the time he was seized.

Parties Liable: ① P.O. Eric Kim and ② P.O. Amanda Esquea

3rd claim

Excessive Force claim

On may 9, 2021 while being carried out in handcuffs out of the Express clothing store, one of the officers that was assisting in carrying the plaintiff out of the store intentionally dropped the plaintiff onto the concrete sidewalk in front of the establishment causing him to experience severe pain that lasted several days (The officer's actions should be captured on the body worn footage of the incident, once the group of officers carrying the plaintiff approaches the street corner).

Parties Liable: ① any officer that carried plaintiff outside of Express clothing store

Force Medication Claim

The Due Process Clause of the Fourteenth amendment Protects an Inmate's "significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs" (Washington v. Harper, 494 U.S. 210).

To state a claim arising from the Forced administration of medication, a plaintiff must allege Facts showing that he refused the medication before it was administered (see Ambrose v. Dell, No. 12-cv-6721, 2016 U.S. Dist. Lexis 29860), and that the medicine was administered without court authorization or in the absence of an emergency situation as required by New York State Law (see Spencer v. Bellevue Hosp., No. 11-cv-7149 (CM), 2012 U.S. Dist. Lexis 54019).

The Second circuit has held that the New York State statutory scheme governing Involuntary Medication meets "the minimum facial requirements of due process – both substantive and procedural" (Project Release v. Prevost, 722 F.2d 960).

In the matter before us, the decision to Forcibly Medicate was only rendered after the plaintiff was discharged from the hospital (see exhibit E of Document titled Exhibits, dated 11/10/2022) (showing Plaintiff was discharged at 9:01 pm); (see also Exhibit D of Document titled Exhibits, dated 11/10/2022) (Illustrating Plaintiff was Forcibly medicated at 9:15 pm) due to Officers manipulating hospital staff to medicate the Plaintiff in order to prevent him from recording their unprofessional conduct with his phone.

at the time the Plaintiff was waiting to be officially discharged, he was not handcuffed (because he was not under arrest) nor was he exhibiting belligerent behavior, he was simply attempting to record officers verbally harrassing him in their endeavor to deceive the plaintiff into be-

coming pugnacious; which would of caused him to be admitted to the CPEP and got the officers off the hook for unlawfully seizing the plaintiff.

The plaintiff's actions at the time he was grabbed (by officers after they knocked his phone out his hand) could not be considered as dangerous simply because he was recording the officers with his phone (see Gerskovich v. Iocco, No. 15-civ-7280, 2017 U.S. Dist. Lexis. 110640) (recording officers performing their duties is a protection of one's first amendment rights according to the first, third, fifth, seventh, ninth and eleventh circuit).

So it can not be said that that conduct by the plaintiff gave rise to an emergency situation, warranting a forcible administration of anti-pyschotic medication.

The plaintiff did not consent to be medicated nor did the actual circumstances warrant him a danger to himself and others giving the defendants the authority to do so pursuant to New York's mental hygiene law (see John Doe v. Dyett, 1993 U.S. Dist. Lexis. 13450).

New York's Mental hygiene Law sanctions involuntary medication "where the patient is presently dangerous and the proposed treatment is the most appropriate reasonably available means of reducing that dangerousness (14 N.Y. Comp. codes R. and Regs § 527.8(c)(1).

A dangerous patient "engages in conduct or is imminently likely to engage in conduct posing a risk of physical harm to himself or others" (14 N.Y. Comp. codes R. and Regs. § 527.8 (a)(4). Administration of medication under such conditions does not amount to a due process violation (see Washington v. Harper, 494 U.S. at 227).

Determining if an emergency justifies forced medication "is a professional judgment call" balancing the institution's safety concerns against the patient's interest in remaining free from unwanted medication (see Bee v. Greaves, 744 F.2d 1387).

Factors to be considered include "the nature and gravity of the safety threat, the characteristics of the individual involved, and the likely effects of particular drugs" (Id.).

Now MD Howard states the following facts to demonstrate that there was an emergency situation that warranted the plaintiff being forcibly medicated:

Unfortunately, when he was arrested, he became highly agitated needing intramuscular meds as documented (see Exhibit G of document titled "Exhibits" dated 11/10/2022)

However, to the contrary, the plaintiff's behavior on arrival was documented as the following:

On arrival, the patient was brought in handcuffed to a stretcher but handcuffs were soon removed as the patient was able to demonstrate adequate behavioral control in the triage area. During our interview, he stated that he ordered food at a store in Times Square and wanted to remain in the store long enough to charge his phone while using a store outlet. The store owner asked him to leave and he refused. This eventually lead to activation of 911 and transport to CPEP for psychiatric clearance before arraignment. The patient denied using substances, denied affective symptoms, denied psychotic symptoms, and denied SI/HI.

The patient provided his version of tonight's events in a reality-based manner, voiced no acute mental health complaints, and during evaluation the

Patient was devoid of any signs or symptoms of severe mental illness.

After reviewing the facts, a logical and reasonable mind will conclude that the plaintiff's documented behavior on arrival was his actual behavior and the facts that were utilized to justify the forcible medication were only introduced into the records (or incorporated) in order to make it appear that an emergency situation existed warranting the forcible administration of anti-psychotic medication in a situation that didn't require such.

The plaintiff was not forcibly medicated prior to arriving at Bellevue hospital and his behavior upon arrival was so exceptional he earned the privilege of having his handcuffs removed.

Furthermore, the facts justifying the forcible medication is incredible as a matter of law due to the fact the plaintiff was forcibly medicated after the decision to discharge him was made and not due to any agitation he displayed after initially getting arrested.

Also, this doctor could not have exercised their professional judgment to forcibly administer medication to lessen the threat of harm to the plaintiff or others because the doctor prescribed a medication to the plaintiff that causes him to experience an anaphylactic reaction even though it was documented in the plaintiff's medical history at the hospital as a drug allergy.

Therefore, the plaintiff's liberty interest in avoiding the unwanted administration of antipsychotic drugs was violated on the day of the incident.

Parties liable: ① M.D. Jonathan Howard and ② RN Kesha Carty

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

① Humiliation, ② Emotional suffering and mental anguish, ③ violation of liberty interest and ④ Fourth amendment protections.

In addition, I suffered physical pain from being dropped by officers and an adverse reaction to the medication I was given at the hospital.

## VI. RELIEF

State briefly what money damages or other relief you want the court to order.

I'm suing each individual for $2 million dollars in compensatory damages and $2 million dollars in punitive damages.

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

1/13/2023
Dated

[signature]
Plaintiff's Signature

Robert | D | Lorch
First Name | Middle Initial | Last Name

09-09 Hazen St.
Prison Address

East Elmhurst | NY | 11370
County, City | State | Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: 1/14/2023

Robert Derek Lurch Sr.
Band c #: 8252200446
GRVC
09-09 Hazen St.
East Elmhurst, NY
11370






Pro Se office
Southern district of New York
United States District Court
500 Pearl St.
New York, NY
10007