UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                 :

ROBERT DEREK LURCH, JR.,                :
                                 :

                Plaintiff,          :

                                 :            22-CV-2324 (VSB)

         - against -                 :

                                 :           **OPINION & ORDER**

                                 :

                                 :

P.O. ERIC KIM, P.O. AMANDA PSAREAS, JOHN :
DOE Officers that assisted in detaining and     :
transporting the Plaintiff, DR. JONATHAN      :
HOWARD, K. CARTY, *registered nurse*, and JOHN :
DOE Officers that arrested Plaintiff on 40th and 8th :
Ave. on May 9, 2021 around 7 PM to 7:45 PM,   :

                                 :

               Defendants.       :

                                 :

------------------------------------------------------------------ X

<u>Appearances</u>:

Robert Derek Lurch, Jr.
New York, NY
*Pro se Plaintiff*

Eldar Mayouhas
Jennine A. Gerrard
Lewis Brisbois Bisgaard & Smith LLP
New York, NY
*Counsel for Defendants Jonathan Howard & Kesha Carty*

Joseph Peter Zangrilli
Mary Kathleen Sherwood
Michael Futral
New York City Law Department
New York, NY
*Counsel for Defendants Eric Kim & Amanda Psareas*

<u>VERNON S. BRODERICK</u>, United States District Judge:

On March 23, 2022, Plaintiff Robert Derek Lurch, Jr. brought this action alleging violations of 42 U.S.C. § 1983. (Doc. 2.) Before me is the motion of Defendants Eric Kim and Amanda Psareas (collectively "Moving Defendants") to dismiss and for a filing injunction against Plaintiff. (Doc. 122.) Plaintiff also requests leave to amend his complaint. (Doc. 102.) For the reasons that follow, the Moving Defendants' motion to dismiss is GRANTED, but their motion for a filing injunction is DENIED. I also address several other motions filed by Plaintiff over the course of this litigation, which are all DENIED.

## I.    **Background**[1]

Plaintiff alleges § 1983 claims against Police Officer Eric Kim ("Kim"), Police Officer Amanda Psareas ("Psareas"), Dr. Jonathan Howard ("Howard"), Nurse Kesha Carty ("Carty"), and two sets of John Doe Officers that arrested Plaintiff. (*See generally* Doc. 58 ("Second Amended Complaint" or "SAC").) Specifically, Plaintiff asserts two sets of claims: (1) false arrest and excessive force claims against two police officers, Eric Kim and Amanda Psareas, (SAC 1, 13, 14),[2] based on an arrest purportedly effectuated on May 9, 2021 at an Express clothing store, (*id.* at 11–14); and (2) false arrest and forceful medication claims based on an arrest purportedly effectuated on the same day at a food establishment on 40th Street and 8th

---

[1] For the purposes of a motion to dismiss, I assume the allegations set forth in the Second Amended Complaint to be true. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings in this Opinion & Order.

[2] The Second Amended Complaint is a compilation of non-consecutively paginated documents. Citations to the Second Amended Complaint therefore refer to the ECF stamp page numbers ("SAC at __").

Avenue by unnamed police officers, (*id.* at 15–16), and a subsequent hospitalization, (*id.* at 16–18).[3]

During the afternoon of May 9, 2021, Plaintiff entered an Express clothing store in New York and asked the manager if he could charge his phone and received permission to do so. (*Id.* at 11.) He left Express and returned with "food and drink." (*Id.*) He was then approached by a "security guard" who "questioned [Plaintiff's] reason for being [in the store]." (*Id.*) Shortly thereafter, Plaintiff was "approached by police, telling [him] he had to leave." (*Id.*) Plaintiff told the officers that he would not leave until he "finish[ed] [his] food." (*Id.*) The officer then "threw [him] to the ground" "in a very rough manner." (*Id.*) The officers "intentionally dropped [Plaintiff] twice" and he had a "knee in [his] back."[4] (*Id.* at 11–12.)

The second incident occurred on the same day under entirely different circumstances. (*Id.* at 15–18.)[5] Plaintiff entered a "small establishment" to "grab a bite to eat." (*Id.* at 15.) At this establishment, the "cashier rudely suggested" that if Plaintiff did not intend to order then he "should just leave." (*Id.*) Plaintiff ordered a meal and ate it at this establishment, and proceeded to charge his phone while eating. (*Id.*) The cashier again asked Plaintiff to leave. (*Id.*) After refusing to leave, two police officers arrived and told Plaintiff that he had to leave. (*Id.*)

---

[3] Although these incidents both took place on the same day, the Second Amended Complaint alleges no factual overlap between the two incidents and different Defendants are allegedly responsible for each incident.

[4] However, Plaintiff does not plead any concrete allegations that the officers were aware of the earlier alleged exchange with the manager, nor any specific facts that support the claim that any dropping of Plaintiff in the course of effectuating the arrest was "intentional[]." (*Id.* at 11.) Further, although it is not entirely clear from the face of the Second Amended Complaint, Plaintiff also raises the possibility that the manager of the store asked him to leave, as he writes that "the real question is what was the reasoning behind officer (or even the manager) asking me to leave." (*Id.* at 13.)

[5] This incident consists of entirely distinct facts and has no legal or factual connection with the previous arrest that occurred other than the fact that they occurred on the same day and involved the same Plaintiff. Although the Moving Defendants briefly address Plaintiff's allegations relating to his second arrest, (Doc. 123 ("Mem.") 3–4, 9–10), these claims do not appear to have been brought against the Moving Defendants, but rather against the Answering Defendants. Therefore, this incident is not the subject of the instant motion to dismiss, and I will not substantively address any claims raised by this incident.

3

Plaintiff refused to leave, saying that he "pa[id] for [his] meal" and would leave when he was done eating. (*Id.*) The police officers then proceeded to arrest Plaintiff and took him to a hospital. (*Id.* at 15–16.) At the hospital, the police officers treated Plaintiff "disrespectful[ly]" and "aggressively." (*Id.* at 16.) Plaintiff was evaluated by a doctor and physicians at the hospital then proceeded to provide Plaintiff with medication that he refused, forming the basis for his forceful medication claim. (*Id.* at 16, 18.)

## II.     <u>Procedural History</u>[6]

Plaintiff filed his complaint on March 23, 2022, based on two allegedly separate arrests that took place on that date. (Doc. 2 ("Complaint" or "Compl.").) On January 23, 2023, Plaintiff filed his first amended complaint. (Doc. 31.) On January 9, 2024, Plaintiff filed the Second Amended Complaint, which alleges § 1983 claims against Kim, Psareas, Howard, Carty, and two sets of John Doe Officers that arrested Plaintiff. (Doc. 58.)

Plaintiff's Complaint identified a number of "John Doe" defendants that he claims participated in the purportedly actionable conduct. (Compl. 1.) Because of this, I entered an order requiring the New York City Law Department to help identify the John Does mentioned in the Complaint. (Doc. 8 ("Under *Valentin v. Dinkins*, a *pro se* litigant is entitled to assistance from the district court in identifying a defendant. 121 F.3d 72, 76 (2d Cir. 1997).").) The New

---

[6] In Defendants' response to Plaintiff's motion for a second *Valentin* order, they reference several facts and documents extrinsic to the Second Amended Complaint and make allegations regarding Plaintiff's second arrest. (Doc. 71 ("According to his arrest report and body-worn camera footage, on May 9, 2021 Plaintiff was arrested while eating and drinking inside of the display case of an Express Clothing Store after he was asked to leave multiple times by multiple people.").) I do not consider any of these allegations in reaching my conclusion below. *See Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."). Although I take judicial notice of the existence of the extrinsic evidence referenced in that filing, I do not consider the veracity of any of the evidence referenced in that filing in reaching my conclusion below. *See Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 477 (S.D.N.Y. 2015) ("When the Court takes judicial notice of a document, it takes notice of the document's existence, not the truth of the statements asserted in the document.").

York City Law Department identified these individuals as Kim, Psareas, (Doc. 20), Howard, and Carty, (Doc. 23).  The parties then engaged in subsequent litigation related to a second *Valentin* order.  (Docs. 67, 71, 77, 99.)

On August 20, 2025 Defendants Howard and Carty (collectively "Answering Defendants") filed an answer.  (Doc. 113.)  On October 23, 2025, Moving Defendants filed a motion to sever.  (Doc. 121 ("MTS").)  On October 24, 2025, Moving Defendants filed a motion to dismiss Plaintiff's Second Amended Complaint, (Doc. 122), accompanied by a memorandum of law, (Mem.).  On December 23, 2025, Plaintiff filed his opposition.  (Doc. 129 ("Opp'n").)  On January 12, 2026, Moving Defendants filed their reply.  (Doc. 130 ("Reply").)

On August 2, 2024, Plaintiff filed a motion to amend his complaint to bring claims relating to the second incident, and to add alleged acts by the Answering Defendants and John Doe police officers.  (Doc. 102.)  Plaintiff has also filed various motions for expedited discovery, (Docs. 100, 106), to stay litigation on the second arrest for litigation to proceed on the first, (Doc. 111), and for reconsideration of my denial of a second *Valentin* order, (Doc. 101).

The Moving Defendants move to dismiss Plaintiff's claims relating to the first incident.  (*See* Mem.)  They also move to sever the claims relating to the second incident from the first, as they are predicated on a different set of operative facts and so will require a different set of legal analyses, even if the two incidents occurred on the same day.  (*See* MTS.)

### III.    **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

Pro se complaints are afforded "special solicitude" and must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, a pro se litigant is still "obligated to comply with the relevant rules of procedural and substantive law." *Doe v. Torres*, No. 05-CV-3388, 2006 WL 290480, at *3 (S.D.N.Y. Feb. 8, 2006).

6

## IV.    <u>Discussion</u>

According to the Second Amended Complaint, the first incident involved an arrest that purportedly violated Plaintiff's "Fourth Amendment protection not to be arrested without probable cause." (SAC 13.)  This is because he was asked to leave the Express clothing store "for no logical reason," and was "treated like a second class citizen." (*Id.*)  During his "violent" expulsion from the store, Plaintiff was "dropped [] twice" and had a "knee in [his] back." (*Id.* at 12.)  He argues his arrest gives rise to an excessive force claim under the Fourth Amendment because "an officer should first utilize verbal commands before utilizing physical force." (*Id.*)

### A.    *False Arrest Claims*

In order to make out a false arrest claim under § 1983, "a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (alterations adopted and internal quotation marks omitted).  "Probable cause to arrest is a complete defense to a false arrest claim." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021).

Here, Moving Defendants argue that they had probable cause to arrest Plaintiff based on a good faith belief that he was trespassing in the Express clothing store.  (Mem. 8–9.)  Although the allegations in the Second Amended Complaint are conclusory and contradictory, Plaintiff appears to claim that an Express security guard told him to leave and suggests that the Express store manager may have also asked him to leave.  (*See* SAC 11 ("[A]t this time it was a new security guard . . . [who] questioned my reason for being there"), 13 ("[W]hat was the reasoning behind [the] officer (or even the manager) asking me to leave").)  Plaintiff states in his opposition that "the cops showed up with the security guard." (Opp'n 2.)  This suggests that the

Moving Defendants were informed by an "eyewitness, who it seems reasonable to believe is telling the truth" that Defendant was trespassing. *See Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (finding probable cause under such circumstances), *aff'd*, 993 F.2d 1534 (2d Cir. 1993) (unpublished table decision).

The Second Amended Complaint does not contain allegations from which it could be inferred that anyone from Express told police officers that Plaintiff was not trespassing. (*But see* Opp'n 2; SAC *passim*.) It has long been established that "[p]robable cause exists when the totality of the circumstances establishes that there is a fair probability of criminal activity." *Parker v. Hearn*, 695 F. Supp. 1421, 1424 (E.D.N.Y. 1988) (citing *Illinois v. Gates*, 462 U.S. 213, 230–231 (1983)). Officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Martinez v. Simonetti*, 202 F.3d 625, 635 (2d. Cir. 2000) (internal quotation marks omitted). Courts have repeatedly held that police officers can rely on the complaints of trustworthy and seemingly credible witnesses to support probable cause to instantiate an arrest. *See, e.g.*, *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." (internal citations omitted)); *Shaw v. City of New York*, No. 95-CV-9325, 1997 WL 187352, at *4 (S.D.N.Y. Apr. 15, 1997) ("Absent circumstances that raise doubt as to their veracity, an officer is entitled to rely upon the statements of victims and witnesses." (collecting cases)); *Parisi v. Suffolk Cnty.*, No. 04-CV-2187, 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009) ("[T]he probable cause standard does not require that the arresting officer affirmatively seek out reasons to doubt the victim or witness where none are apparent."). There is no requirement for a "collateral investigation into the credibility of the complainant" when there is no reason to doubt the

trustworthiness of that witness, as to do so "would place an unfair burden on law enforcement officers." *McDermott v. City of New York*, No. 94-CV-2145, 1995 WL 347041, at *4 (E.D.N.Y. May 30, 1995).

Therefore, it is completely beside the point whether the manager allowed Plaintiff to charge his phone when Plaintiff first entered the store, (SAC 11), whether she may have asked Plaintiff to leave, (*id.* at 13), or whether she was "not present" at all, (Opp'n 2). Absent allegations that her permission or lack thereof was somehow communicated to the Moving Defendants, there is no genuine dispute over whether there was probable cause to arrest Plaintiff. The Moving Defendants received a complaint from a credible witness—the security guard—that Plaintiff was trespassing. Whether or not, as a legal matter, Plaintiff was actually guilty of the crime of trespass was not the decision that the Moving Defendants were being asked to make at the moment they detained Plaintiff. *See Bernard v. U.S.*, 25 F.3d 98, 103 (2d Cir.1994) ("[P]robable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." (citing *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983))).

Moreover, the allegations in the Second Amended Complaint establish that the police officers had probable cause to believe that Plaintiff was trespassing. The fact that Plaintiff left the store to purchase food and then returned to eat those items when the manager had only consented for him to charge his phone, (*see* SAC 11), suggests that he exceeded the scope of the manager's consent for him to be present at the establishment. This further supports the Moving Defendants' probable cause defense. "The requisite elements for a claim of trespass are the intentional entry by defendants on to plaintiffs' land and the wrongful use without justification or consent." *Matthews v. Malkus*, 377 F. Supp. 2d 350, 359 (S.D.N.Y. 2005) (discussing New York

9

law). Someone can be convicted of trespassing when he remains in a location after being asked to leave when he does not have the right to remain at that location. *People v. Munroe*, 853 N.Y.S.2d 457, 458 (N.Y. App. Term 2007) (affirming conviction for trespass when "security was called and defendant was informed that he would be arrested if he did not leave the office voluntarily"). "Clearly, a private person has the right to bar an individual from private property. Similarly, one can bar an individual from a quasi-private building, such as a department store." *People v. Nunez*, 431 N.Y.S.2d 650, 653 (N.Y. Crim. Ct. 1980) (citation omitted), *aff'd*, 454 N.Y.S.2d 290 (N.Y. App. Term 1982).

Plaintiff argues that the manager provided consent for him to be there to charge his phone, as long as he did not "make it a habit." (SAC 11.) However, even assuming that this amounted to consent by the manager, such consent is not boundless. *See Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 249 (S.D.N.Y. 2000) (finding defendant liable for trespass when his behavior "exceed[ed] the scope of [plaintiff's] consent."), *aff'd as modified*, 356 F.3d 393 (2d Cir. 2004). Plaintiff does not allege facts from which it could be inferred that the manager consented for him to remain in the store not only to charge his phone, but also to leave, purchase food and drink, and then return to eat that food. (*See* SAC 11 ("I stepped back inside with my food and drink. . . . then I proceeded to eat.").) Indeed, there are no allegations in the Second Amended Complaint that would support an inference that the manager of the Express clothing store would give consent to a customer, let alone someone who did not appear to the manager to be shopping, but rather just requesting to charge his phone, to leave the store to get food, come back to the store, and then to eat that food. The limited nature of the manager's purported consent reinforces the conclusion that the Moving Defendants had probable cause when they arrested Plaintiff.

10

Plaintiff's arguments in his short and legally unsupported opposition brief do not alter my conclusion that probable cause supported Plaintiff's arrest.  He cites no caselaw that would support the survival of a false arrest lawsuit based on the complaint of a credible witness who claimed trespass and a subsequent refusal by the Plaintiff to heed the Moving Defendants' order to leave the premises until "after he finished his meal." (*See* Opp'n 2, 4.)  Therefore, the Moving Defendants' motion to dismiss Plaintiff's false arrest claims as to his first arrest is GRANTED.[7]

**B.**    ***Excessive Force Claims***

Plaintiff also makes excessive force claims against the Moving Defendants arguing that "the manner that these officers conducted the arrest was unlawful and barbaric." (Opp'n 5.)  Defendant argues that "a verbal command must be made before physical force is used". (*Id.*)  He claims to have been "viciously thrown to the ground" and "drop[ped] on the ground several times." (*Id.*)  However, Plaintiff failed to report any injuries. (*Id.*)

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir.), *supplemented*, 108 F. App'x 10 (2d Cir. 2004) (summary order) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion." *Rogoz v. City of Harford*, 796 F.3d 236, 246 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 396).  In order for the amount of force used on Plaintiff by the Moving Defendants to have been excessive it must have been unreasonable "under the

---

[7] As I have already indicated, the Moving Defendants are not alleged to have conducted the second arrest.  (*See* SAC 17.)

totality of the circumstances." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000). Further, "to prevail on an excessive force claim, Plaintiff must have suffered an actual injury that resulted from Defendants' use of force." *See Warren v. Ewanciw*, No. 15-CV-8423, 2019 WL 589488, at *9 (S.D.N.Y. Feb. 13, 2019) (internal quotation marks omitted); *see also Landy v. Irizarry*, 884 F. Supp. 788, 798, n.14 (S.D.N.Y. 1995) ("An arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim.").

As an initial matter, Plaintiff's argument that because "no verbal commands" were given, that means, *ipso facto*, that excessive force was used, (*see* Opp'n 5), fails as a matter of law. Here, Plaintiff fails to allege that he was injured. He also argues that "it is common sense if you drop someone that is handcuffed and shackled from in the air they will sustain some type of injuries or trauma that's not minimal." (*Id.*) However, Plaintiff does not and cannot point to any allegations in the Second Amended Complaint that he sustained actual physical injury as a result of the Moving Defendants' use of force in effectuating his arrest. (*See* SAC *passim*.)

Although Plaintiff need not have "report[ed] his injuries," (*see* Opp. 5), to state a claim for excessive force, *see Kayo v. Mertz*, 531 F. Supp. 3d 774, 797 (S.D.N.Y. 2021) ("A plaintiff need not have sought medical attention to support an excessive force claim"), he is required to plead such injuries with the requisite particularity to defeat a motion to dismiss, *see Wims v. New York City Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011) ("There is no assertion that having been 'thrown flat on [his] face unto the filthy ground' resulted in any specific or identifiable physical or mental injury and harm beyond a conclusory assertion which, standing alone, is insufficient under *Twombly* and *Iqbal*."); *see also id.* ("Merely placing tight handcuffs on a suspect is not enough for an excessive force claim."). Having failed to do

so, Plaintiff's excessive force claims do not meet the federal pleading standard.  Consequently, Moving Defendants' motion to dismiss Plaintiff's excessive force claims is GRANTED.

### C.    *Qualified Immunity*

Because I find that Plaintiff's claims fail on the merits, I need not address Moving Defendants' qualified immunity arguments.  *See Rodriguez v. Vill. of Ossining*, 918 F. Supp. 2d 230, 241 n.17 (S.D.N.Y. 2013) ("Because Plaintiff's [] claim fails for all the reasons stated above, I need not consider whether Defendant [] is entitled to qualified immunity with respect to that claim.").

### D.    *Filing Injunction*

Plaintiff is a "serial federal litigant" who has brought more than thirty lawsuits in the Eastern and Southern Districts of New York.  (Mem. 1 (quoting *Lurch v. Menendez*, No. 19-CV-6011, 2025 WL 2922543, at *21 (E.D.N.Y. Aug. 1, 2025).)  Indeed, this case was nearly dismissed over a year ago under the three strikes rule, (*see* Docs. 82, 89), but I determined that in the wake of the Second Circuit's ruling in *Cotton v. Noeth*, 96 F.4th 249 (2d Cir. 2024), which held that "whether a *Heck* dismissal qualifies as a strike depends on . . . whether the dismissal turned on the merits or whether it was simply a matter of sequencing or timing," *id.* at 257, that Plaintiff only had two strikes, (Doc. 108 at 6).  Because two of Plaintiff's purported strikes at the time of the filing of this suit were *Heck* dismissals that did not qualify as strikes sufficient to revoke Plaintiff's IFP status, I found that "only two of Lurch's past cases qualify as strikes under the PLRA," and denied Defendants' motion to revoke Plaintiff's IFP status.  (*Id*. at 6–7.)

However, "it appears to be generally accepted that the relevant time for the three strikes inquiry is when IFP status is granted."  *Gasaway v. Purdue*, No. 11-CV-1272, 2012 WL 1952928, at *5 n.6 (N.D.N.Y. Apr. 9, 2012), *report and recommendation adopted sub nom.*

13

*Gasaway v. Perdue*, 2012 WL 1952644 (N.D.N.Y. May 30, 2012).  In other words, "the language of section 1915(g) only allows a plaintiff's IFP status to be revoked if the plaintiff accumulates three strikes before bringing their current action."  *Shomo v. Eckert*, 345 F.R.D. 570, 578 (W.D.N.Y.), *appeal dismissed* (2d Cir. 24-818) (Apr. 3, 2025), *reconsideration denied*, 755 F. Supp. 3d 344 (W.D.N.Y. 2024); *see also Southerland v. Patterson*, No. 10-CV-09155, 2012 WL 208105, at *1 (S.D.N.Y. Jan. 23, 2012) ("[T]he Court agrees that Southerland accumulated four strikes prior to the filing of this action.").  Because this motion to dismiss had not been granted at the time that Plaintiff was granted IFP status, (*see* Doc. 5), or when this lawsuit was initiated, I cannot count granting the motion to dismiss as a third strike that would support my issuance of a filing injunction against Plaintiff under the three strikes rule.  Consequently, Moving Defendants' motion for a filing injunction is DENIED.

> ### E.    *Request to Amend*

Plaintiff has requested leave to amend his Second Amended Complaint to include new allegations relating to the second arrest, which is not the subject of this motion to dismiss.  (Doc. 102).  "Leave to amend is to be freely given when justice requires."  *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 140 (2d Cir. 2013) (citing Fed.R.Civ.P. 15(a)(2)).  A "Plaintiff's *pro se* status entitles him to additional solicitude," but "does not excuse his compliance with either the Federal Rules of Civil Procedure or . . . provide a basis for failing to apply the appropriate legal standard."  *Noel v. Clouston*, No. 21-CV-6559, 2025 WL 1640731, at *2 (W.D.N.Y. May 2, 2025); *see also Gross v. Sanchez*, No. 20-CV-4873, 2023 WL 5486249, at *2 (E.D.N.Y. Aug. 24, 2023) ("[E]ven *pro se* litigants, as Plaintiff is here, are required to adhere to the federal and local rules in the same manner as other litigants.")  "[D]enial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, or futility."  *Abellard*

14

*v. King*, No. 24-CV-03719, 2025 WL 746022, at *2 (E.D.N.Y. Mar. 7, 2025) (quoting *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021)).

Here, Defendants lay out a long pattern of litigation misconduct by Plaintiff.  (Reply 8 (collecting cases demonstrating "Plaintiff's chronic history of vexatious litigation.").)  Indeed, while bringing one recent case, Plaintiff was caught on videotape "theorizing about different lawsuits he could bring against various people based on the events of the evening and providing various explanations of what happened."  *Menendez*, 2025 WL 2922543, at *1.  This history of bringing claims based on "nothing . . . other than [Lurch's] own contradictory and incomplete testimony," *id.* at *21 (alteration in original) (quoting *Lurch v. Chaput*, No. 16-CV-2517, 2022 WL 889259, at *9 (S.D.N.Y. Mar. 25, 2022)), supports an inference of bad faith or prejudice as to Plaintiff's attempt to amend his complaint for a third time.  "Rule 15 is liberal, yes, but it is also temperate."  *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 147 (2d Cir. Aug. 12, 2020).

Plaintiff's motion for leave to amend is DENIED.

### F.    *Motions for Expedited Discovery*

Plaintiff has also filed two motions that I construe as motions for expedited discovery. (Docs. 100, 106.)  "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  These motions for discovery were filed before the Answering Defendants filed their answer, meaning that Plaintiff must make a showing of good cause to depart from the traditional rules regarding discovery before the discovery requests can be granted.  *See Klymn v. Monroe Cnty. Sup. Ct.*, No. 21-CV-6488, 2023 WL 10354316, at *8–9 (W.D.N.Y. Dec. 8, 2023) (finding that "Plaintiff has not met the burden for expedited, including

15

pre-answer, discovery," because he "failed to establish good cause for pre-answer discovery"), *report and recommendation adopted*, 2024 WL 446031 (W.D.N.Y. Feb. 5, 2024); *N. Atl. Operating Co. v. Evergreen Distributors, LLC*, 293 F.R.D. 363, 368 (E.D.N.Y. 2013) (requiring showing of "good cause for expedited discovery" including "some probability of success on the merits"); *see also* 8A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").

Nowhere in the two motions that Plaintiff submits, (Docs. 100, 106), does he set forth adequate facts that could establish "good cause" such that I would be persuaded to permit deviation from the ordinary rules and procedures governing discovery in civil cases. Plaintiff argues the discovery is necessary "due to material inconsistencies of fact between the arrest report and the medical records." (Doc. 100.) However, these sorts of alleged inconsistencies are the exact kind of concerns that traditional discovery pursuant to the Federal Rules of Civil Procedure is designed to probe. Further, discovery related to claims that are not alleged in the Second Amended Complaint is not needed here because I am not permitting Plaintiff to amend his complaint a third time. *See supra* § IV.E. I see no special need to depart from the usual back and forth of civil discovery for the instant matter. Plaintiff's motions for expedited discovery are DENIED.

16

### G.    *Renewed Motion for a Second Valentin Order*

In another motion, Plaintiff argues assistance is needed under *Valentin* to identify alleged alternative officers who transported him to the hospital as the result of the alleged second arrest. (Doc. 101.)  However, as I already explained in my February 16, 2024 Order denying Plaintiff's request for a second *Valentin* order, Plaintiff "alleges no facts showing how these Doe defendants were directly involved in violating his rights, and provides no information" that would "allow any City agency to identify these defendants."  (Doc. 72 at 2 (quoting *Flowers v. Sehl*, No. 22-CV-2766, 2022 WL 1471038, at *1 (S.D.N.Y. May 10, 2022) and collecting cases).)  I see no reason to deviate from my prior ruling.

Moreover, in order to support a *Valentin* order, a pro se Plaintiff must actually provide "identifying information" or identify a "person or institution that the Court could direct to assist in identifying the defendants." *Sebastian v. Doe*, No. 25-CV-0911, 2025 WL 831588, at *1 (S.D.N.Y. Feb. 19, 2025).  Plaintiff provides no such information here beyond identifying the officers alleged to have participated in the purported second arrest as "Caucasian" and proposing the legally unsupported solution that "the city of New York can subpoena Meta" to obtain a video of the two officers in question.  (Doc. 78 at 2.)  Courts in this District require more than a "self-serving conclusory assertion that defendants' identities could only be uncovered by subpoenaing the third parties at issue," to support the issuance of such a subpoena to a non-party. *Colds v. Smyth*, No. 22-CV-2023, 2023 WL 6258544, at *4 (S.D.N.Y. Sept. 26, 2023) (quoting *SingularDTV, GmbH v. Doe*, 637 F. Supp. 3d 38, 42 (S.D.N.Y. 2022)).

In addition, a plaintiff must show that the officers in question were "directly involved in violating his rights." *Flowers*, 2022 WL 1471038, at *1.  On the facts alleged in the Second

17

Amended Complaint, Plaintiff cannot.  The allegations concerning an alleged false arrest relating to Plaintiff's time at Bellevue Hospital are not in the Second Amended Complaint, as Plaintiff himself acknowledges.  (Doc. 101 ("Plaintiff will be amending his complaint to add an unlawful seizure (or false arrest) claim against the officers that interacted with Bellevue Hospital Staff.").)  Nor are there any excessive force claims relating to the second arrest.  (*See* SAC *passim*.)  Because Plaintiff will not, in fact, be amending his complaint for a third time, *see supra* § IV.E, the allegations relating to the date and time of Plaintiff's arraignment that he claims support a second *Valentin* order here, (Doc. 101), and require the expedited discovery discussed above, *see supra* § IV.F, are not actually operative in this case and so Plaintiff cannot meet his burden to demonstrate that a second *Valentin* order should issue or that discovery is warranted on this topic.  Plaintiff's motion filed at Doc. 101 and any related motions or filings for a second *Valentin* order are DENIED.

Finally, as I have already explained, *see supra* p. 4 n.6, I have not relied on the factual allegations contained in the parties' litigation relating to the *Valentin* order in drawing the conclusions expressed in this Opinion & Order, and instead assumed the factual allegations in the Second Amended Complaint to be true.  I need not and did not rely on the Moving Defendants' representations in the filing, (Doc. 71), that Plaintiff seeks to have struck from the record, (Doc. 99), in reaching any of the conclusions expressed in this Opinion & Order.  There is no longer any pending litigation regarding the appropriateness of a second *Valentin* order, which is the only purpose for which the Government's filing was entered.  Plaintiff's motion to strike, (Doc. 99), is therefore DENIED as moot.

## V.    Conclusion

The Moving Defendants' motion to dismiss, (Doc. 122), is GRANTED.  The Moving Defendants' motion to sever, (Doc. 121), is DENIED as moot.[8]  Plaintiff's motion for leave to amend his Second Amended Complaint, (Doc. 102), is DENIED.  Plaintiff's motion to stay this litigation based upon his purported second arrest, (Doc. 111), is DENIED as moot.  Plaintiff's motions for expedited discovery, (Docs. 100, 106), are DENIED.  Plaintiff's renewed motion for a second *Valentin* Order, (Doc. 101), is DENIED.  Plaintiff's motion to strike, (Doc. 99), is DENIED as moot.  The Clerk of Court is respectfully directed to terminate the aforementioned motions.

SO ORDERED.

Dated: March 18, 2026
       New York, New York

Vernon S. Broderick
United States District Judge

---

[8] No claims against the Moving Defendants remain in this litigation.

19